UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOAQUIN VELETA,<br><br>　　　　　Petitioner,<br><br>　　v.<br><br>D.L. RUNNELS,<br><br>　　　　　Respondent. | 1:07-CV-0578 AWI JMD HC<br><br>FINDINGS AND RECOMMENDATION REGARDING PETITION FOR WRIT OF HABEAS CORPUS<br><br>ORDER DIRECTING CLERK OF COURT TO CHANGE NAME OF RESPONDENT |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

**BACKGROUND**

Petitioner is currently in the custody of the California Department of Corrections pursuant to a judgment of the Kern County Superior Court. A jury found Petitioner guilty of robbery, assault with a deadly weapon, making criminal threats, unlawful participation in a criminal street gang, and dissuading a witness from testifying. The trial court sentenced Petitioner to life in prison with a minimum parole eligibility period of 15 years. (Answer at 1-2.)

Petitioner appealed to the California Court of Appeal. The court affirmed the judgment in a reasoned opinion. (Answer at 2; Lodged Docs. 1-4.)

Petitioner filed a petition for review in the California Supreme Court. The court summarily denied review. (Answer at 2; Lodged Doc. 5.)

1    Petitioner filed a petition for writ of habeas corpus in the Kern County Superior Court. The
2 court denied the petition in a reasoned opinion. (Answer at 2-3; Lodged Doc. 6.)
3    Petitioner filed a petition for writ of habeas corpus in the California Court of Appeal. The
4 court summarily denied the petition. (Answer at 3; Lodged Doc. 7.)
5    Petitioner filed a petition for writ of habeas corpus in the California Supreme Court. The
6 court summarily denied the petition. (Answer at 3; Lodged Doc. 8.)
7    On October 21, 2005, Petitioner filed the instant petition in this Court. The petition raises the
8 following six grounds for relief: 1) insufficient evidence to support convictions for robbery, assault
9 with a deadly weapon, and making an unlawful threat; 2) Petitioner's rights were violated when the
10 recording of the victim's pre-trial interview was erased; 3) insufficient evidence to support
11 conviction for witness intimidation; 4) Petitioner's rights were violated because the victim's
12 identification of him was unreliable; 5) insufficient evidence to support imposition of gang
13 enhancements and conviction for unlawful participation in a criminal street gang; and 6) ineffective
14 assistance of counsel.
15    On July 26, 2007, Respondent filed an answer to the petition.
16    On September 7, 2007, Petitioner filed a traverse to the answer.

## FACTUAL BACKGROUND[1]

Jeranamo Reyes was working in his backyard in January of 2001 when a neighbor told him that someone had taken his keys from the front door of his home. Reyes suspected that an individual he knew from the neighborhood, who he knew as "Rema," was the one who stole the keys. Rema spent time at a house near the A and M Market along with a group including Petitioner, so Reyes went to that house to get his keys back. As Reyes suspected, Rema was at the house, as was another individual known as "Piso." When Reyes asked Rema to return the keys, Rema threw the keys at Reyes and Piso struck Reyes. Reyes fled in fear with the keys as Rema and Piso yelled at him.

On February 3, 2001, Reyes went to visit a friend who lived in a trailer in an alley near the A and M Market. When Reyes entered the alley he saw Petitioner, Piso, and another individual known

---

[1] The facts are derived from the factual summary set forth by the California Court of Appeal in its opinion of January 6, 2003. (Lodged Doc. 4.)

as "Palon" in the alley. Reyes walked past the group to his friend's trailer, but she was not at home. When Reyes turned to leave the alley, he discovered that Piso and Petitioner had moved to block his way.

Palon grabbed Reyes by the neck, put a knife to his side, and told him to walk back inside the alley. Petitioner and Piso drew closer to Reyes. Palon took Reyes's keys and wallet. Palon told Reyes "if that ring that you have on is gold, we will cut your finger" and "if you are hiding any money, I will hit you even more than I did the first time." Palon and Piso told Reyes to take his clothes off. Petitioner stood on the top step of the trailer, watched, and said something to Reyes. Reyes, who does not understand English very well, did not understand what Petitioner said. Palon took $5 from Reyes's wallet, then gave Reyes back the wallet and keys. Petitioner told Reyes not to take off his pants. Reyes was beaten, but not by Petitioner. After his wallet and keys were returned, Reyes pulled up his pants, jumped over a fence, and ran home.

Reyes, who did not have a telephone, did not call police because he was too injured to leave his home and feared retaliation from his attackers. Reyes did call an ambulance four days after the attack. The paramedics reported the attack to police. Kern County Sheriff's Deputy Robert Contreras interviewed Reyes on February 6, 2001. Reyes identified Petitioner, Piso, and Palon in separate photographic lineups. Reyes later identified Rema in person. Deputy Contreras observed that Reyes's face was swollen and bruised, and he had three small cuts on his neck. Reyes refused to go to the hospital because a police escort was unavailable that day.

Later that day, Reyes was in his yard when Petitioner and Rema approached him. They moved close to Reyes and asked him why he was a "rat." Petitioner told Reyes that if any one of the assailants went to jail something would happen to Reyes. Later that day, other individuals who Reyes did not know came to the front of his home and called him by name to come out of the house. Reyes refused to leave the house.

Deputy Contreras, a gang expert, testified that the assailants were part of the "Lamont 13" gang, a group affiliated with the Mexican Mafia, and described the group's predicate offenses that qualified them as a criminal street gang. These offenses included vandalism, robberies, and homicides. Petitioner himself admitted his membership in the group to Contreras on five separate

occasions. Lamont 13 gang members intimidate their neighbors so they will not report the gang's criminal activities.

**DISCUSSION**

**I.  Jurisdiction**

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375 n.7 (2000). Petitioner asserts that he suffered violations of his rights as guaranteed by the U.S. Constitution. In addition, the conviction challenged arises out of the Kern County Superior Court, which is located within the jurisdiction of this court. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(d). Accordingly, the Court has jurisdiction over the action.

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997), *quoting* Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir. 1996), *cert. denied,* 520 U.S. 1107 (1997), *overruled on other grounds by* Lindh v. Murphy, 521 U.S. 320 (1997) (holding AEDPA only applicable to cases filed after statute's enactment). The instant petition was filed after the enactment of the AEDPA; thus, it is governed by its provisions.

**II.  Legal Standard of Review**

This Court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

The instant petition is reviewed under the provisions of the Antiterrorism and Effective Death Penalty Act which became effective on April 24, 1996. Lockyer v. Andrade, 538 U.S. 63, 70 (2003). Under the AEDPA, an application for habeas corpus will not be granted unless the adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the

evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d); see Lockyer, 538 U.S. at 70-71; see Williams, 529 U.S. at 413.

As a threshold matter, this Court must "first decide what constitutes 'clearly established Federal law, as determined by the Supreme Court of the United States.'" Lockyer, 538 U.S. at 71, *quoting* 28 U.S.C. § 2254(d)(1). In ascertaining what is "clearly established Federal law," this Court must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." Id., *quoting* Williams, 592 U.S. at 412. "In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." Id.

Finally, this Court must consider whether the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law." Lockyer, 538 U.S. at 72, *quoting* 28 U.S.C. § 2254(d)(1). "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams, 529 U.S. at 413; see also Lockyer, 538 U.S. at 72. "Under the 'reasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413.

"[A] federal court may not issue the writ simply because the court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." Id. at 409.

Petitioner has the burden of establishing that the decision of the state court is contrary to or involved an unreasonable application of United States Supreme Court precedent. Baylor v. Estelle, 94 F.3d 1321, 1325 (9th Cir. 1996). Although only Supreme Court law is binding on the states, Ninth Circuit precedent remains relevant persuasive authority in determining whether a state court decision is objectively unreasonable. See Duhaime v. Ducharme, 200 F.3d 597, 600-01 (9th Cir.

1999).

AEDPA requires that we give considerable deference to state court decisions. The state court's factual findings are presumed correct, 28 U.S.C. § 2254(e)(1), and we are bound by a state's interpretation of its own laws. Souch v. Schaivo, 289 F.3d 616, 621 (9th Cir. 2002), *cert. denied*, 537 U.S. 859 (2002), *rehearing denied*, 537 U.S. 1149 (2003).

### III. Review of Petitioner's Claims

#### A. Ground One

Petitioner argues that there was insufficient evidence to support his convictions for robbery, assault with a deadly weapon, and making an unlawful threat.

This claim was presented in an appeal to the California Court of Appeal, which affirmed the judgment. (Lodged Docs. 1-4.) The issue was then raised in a petition for review to the California Supreme Court, which summarily denied review. (Lodged Doc. 5.) The California Supreme Court, by its "silent order" denying review, is presumed to have denied the claims presented for the same reasons stated in the opinion of the lower court. Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991).

In rejecting Petitioner's claim, the Court of Appeal found that Petitioner's actions and his prior relationship with the other assailants constituted sufficient evidence to support his convictions. (Lodged Doc. 4 at 5-6.)

A federal habeas court reviews sufficiency of evidence claims by determining "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Lewis v. Jeffers, 497 U.S. 764, 781 (1990); Jackson v. Virginia, 443 U.S. 307, 318-19 (1979). "[T]he standard must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." Jackson, 443 U.S. at 324 n.16.

Under California law, "a person aids and abets the commission of a crime when he or she, acting with (1) knowledge of the unlawful purpose of the perpetrator; and (2) the intent or purpose of committing, encouraging, or facilitating the commission of the offense, (3) by act or advice aids, promotes, encourages or instigates, the commission of the crime." People v. Beeman, 35 Cal.3d 547, 561 (1984); accord CALJIC 3.01. "[N]either presence at the scene of a crime nor knowledge of, but

failure to prevent it, is sufficient to establish aiding and abetting its commission. However, '[a]mong the factors which may be considered in making the determination of aiding and abetting are: presence at the scene of the crime, companionship, and conduct before and after the offense.'" People v. Campbell, 25 Cal.App.4th 402, 409 (1994) (citations omitted).

Penal Code section 422 provides that "[a]ny person who willfully threatens to commit a crime which will result in death or great bodily injury to another person, with the specific intent that the statement . . . be taken as a threat . . . and thereby causes that person reasonably to be in sustained fear for his or her own safety" is guilty of making an unlawful threat. Cal. Penal Code § 422. Section 422 was intended to protect peaceful citizens from fear, intimidation, and physical harm caused by the activities of violent groups and individuals. People v. Butler, 85 Cal.App.4th 745, 758 (2000). All of the circumstances should be considered in determining whether a threat was made, including the relationship between the parties and the defendant's subsequent actions. People v. Solis, 90 Cal.App.4th 1002, 1013-14 (2001); People v. Butler, 85 Cal.App.4th 745, 754 (2000).

The state court's determination that sufficient evidence supported Petitioner's convictions was not unreasonable. The evidence showed that, just prior to the robbery and assault, Petitioner helped block the victim's way, then followed along as Palon held a knife to the victim's side and pulled him back into the alley. It further showed that Petitioner and Rema later approached the victim, asked him why he was a "rat," and told him that something would happen to him if any of his assailants went to jail. (Lodged Doc. 11 at 52-69.) This evidence, when considered in combination with Petitioner's relationship to the victim's other assailants, was sufficient to support Petitioner's convictions for robbery, assault with a deadly weapon, and making an unlawful threat. (See id. at 107-13, 120, 129-35.)

**B.  Ground Two**

Petitioner argues that his rights were violated when Deputy Contreras erased the contents of a dictation cassette, which he had used to record a pre-trial conversation with the victim, instead of turning it over to the defense.

This claim was presented in a petition for writ of habeas corpus to the Kern County Superior Court, which denied the petition in a reasoned opinion. (Lodged Doc. 6.) The issue was then

presented in petitions for writ of habeas corpus to the California Court of Appeal and California Supreme Court, which summarily denied the petitions. (Lodged Docs. 7-8.) The Court of Appeal and California Supreme Court, by their "silent orders" denying the petitions, are presumed to have denied the claims presented for the same reasons stated in the opinion of the lower court. Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991).

In rejecting Petitioner's claim, the Superior Court found that erasing the cassette did not violate any rule applicable in a state criminal proceeding. (Lodged Doc. 4 at 3, 6.)

Destruction of evidence will only violate the Federal Constitution where the evidence "possess[es] an exculpatory value that was apparent before the evidence was destroyed, and [is] of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." California v. Trombetta, 467 U.S. 479, 488-89 (1984). Further, where the evidence was only "potentially useful," as opposed to "materially exculpatory," a criminal defendant must show bad faith on the part of the police to establish a due process violation. Arizona v. Youngblood, 488 U.S. 51, 57-58 (1988); Illinois v. Fisher, 540 U.S. 544, 547-49 (2004).

The state court's determination was not unreasonable. Deputy Contreras testified that, after he typed a report using the dictation cassette, he used the cassette for further dictations, recording over his interview with the victim. (Petition, Ex. A.) Petitioner has not shown that the cassette contained any information that was materially exculpatory, as opposed to potentially useful, as the victim consistently identified Petitioner as one of his assailants. (See Lodged Doc. 11 at 51-52, 72-75, 128-35.) Further, Petitioner has not shown that Deputy Contreras acted in bad faith in recording over the interview.

**C. Ground Three**

Petitioner argues that there was insufficient evidence to support his conviction for witness intimidation.

This claim was presented in an appeal to the California Court of Appeal, which affirmed the judgment. (Lodged Docs. 1-4.) The issue was then raised in a petition for review to the California Supreme Court, which summarily denied review. (Lodged Doc. 5.) The California Supreme Court, by its "silent order" denying review, is presumed to have denied the claims presented for the same

reasons stated in the opinion of the lower court.  Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991).

In rejecting Petitioner's claim, the Court of Appeal found that the broad phrasing of Petitioner's threat, and the circumstances surrounding it, constituted sufficient evidence to support his conviction.  (Lodged Doc. 4 at 7.)

As stated above, a federal habeas court reviews sufficiency of evidence claims by determining "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  Lewis v. Jeffers, 497 U.S. 764, 781 (1990); Jackson v. Virginia, 443 U.S. 307, 318-19 (1979).  "[T]he standard must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law."  Jackson, 443 U.S. at 324 n.16.

Penal Code section 136.1(a)(2) prohibits "[k]nowingly and maliciously attempt[ing] to prevent or dissuade any witness or victim from attending or giving testimony at any trial, proceeding, or inquiry authorized by law."  Cal. Penal Code § 136.1(a)(2).  No specific words or actions are required to constitute the offense.  Instead, the words or actions must support the inference that the defendant attempted to induce a person to withhold testimony.  People v. Mendoza, 59 Cal.App.4th 1333, 1344 (1997).

The state court's determination was not unreasonable.  The evidence showed that, after the victim discussed the assault and robbery with police, Petitioner and Rema came to his house, accused him of being a "rat," and told him that something might happen to him if any of his assailants went to jail.  (Lodged Doc. 11 at 67-69.)  This evidence was sufficient for the jury to find that Petitioner attempted to dissuade the victim from giving testimony at a future trial or proceeding.

**D.  Ground Four**

Petitioner claims that his rights were violated because the victim's identification of him was unreliable.

This claim was presented in a petition for writ of habeas corpus to the Kern County Superior Court, which denied the petition in a reasoned opinion.  (Lodged Doc. 6.)  The issue was then presented in petitions for writ of habeas corpus to the California Court of Appeal and California Supreme Court, which summarily denied the petitions.  (Lodged Docs. 7-8.)  The Court of Appeal

and California Supreme Court, by their "silent orders" denying the petitions, are presumed to have denied the claims presented for the same reasons stated in the opinion of the lower court. Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991).

In rejecting Petitioner's claim, the Superior Court found that a habeas petition could not be used to challenge the credibility of witnesses. (Lodged Doc. 4 at 6.)

"[C]onvictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." Simmons v. U.S., 390 U.S. 377, 384 (1968). "[T]he factors to be considered in evaluating the likelihood of misidentification include the opportunity of the witness to view the criminal at the time of the crime, the witness'[s] degree of attention, the accuracy of the witness'[s] prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation." Neil v. Biggers, 409 U.S. 188, 199-200 (1972).

Here, the victim had two opportunities to view the unknown criminal, as he stated that the person who assisted Piso and Palon with the assault and robbery was the same person who later appeared with Rema to threaten him. (Lodged Doc. 11 at 51-68.) The victim had also seen the unknown criminal around the neighborhood prior to the assault and robbery. (Id. at 51.) Shortly after the incidents, the victim was able to pick Petitioner out of a photographic lineup as the person present during the assault and robbery and the person who had later threatened him. (Id. at 74-75, 133-35.) Further, Petitioner was able to identify his other assailants by their nicknames, and they were known to be associates of Petitioner and fellow members of his gang. (Id. at 73-75, 104, 107-12, 120-29, 133.) While there were some discrepancies in the victim's various descriptions of the unknown criminal, they were not significant enough to show that the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification. (See Petition, Ex. B.)

### E. Ground Five

Petitioner argues that there was insufficient evidence to support the imposition of gang

enhancements and his conviction for unlawful participation in a criminal street gang.

This claim was presented in a petition for writ of habeas corpus to the Kern County Superior Court, which denied the petition in a reasoned opinion. (Lodged Doc. 6.) The issue was then presented in petitions for writ of habeas corpus to the California Court of Appeal and California Supreme Court, which summarily denied the petitions. (Lodged Docs. 7-8.) The Court of Appeal and California Supreme Court, by their "silent orders" denying the petitions, are presumed to have denied the claims presented for the same reasons stated in the opinion of the lower court. Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991).

In rejecting Petitioner's claim, the Superior Court found that sufficiency of the evidence claims cannot be raised in a habeas petition. (Lodged Doc. 4 at 7.)

As stated above, a federal habeas court reviews sufficiency of evidence claims by determining "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Lewis v. Jeffers, 497 U.S. 764, 781 (1990); Jackson v. Virginia, 443 U.S. 307, 318-19 (1979). "[T]he standard must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." Jackson, 443 U.S. at 324 n.16.

At the time of Petitioner's offenses, Penal Code section 186.22(a) stated as follows:

> Any person who actively participates in any criminal street gang with knowledge that its members engage in or have engaged in a pattern of criminal gang activity, and who willfully promotes, furthers, or assists in any felonious criminal conduct by members of that gang, shall be punished by imprisonment in a county jail for a period not to exceed one year, or by imprisonment in the state prison for 16 months, or two or three years.

Cal. Penal Code § 186.22(a) (2001). Penal Code section 186.22(b)(1) provided for a sentence enhancement for "any person who is convicted of a felony committed for the benefit of, at the direction of, or in association with any criminal street gang, with the specific intent to promote, further, or assist in any criminal conduct by gang members." Cal. Penal Code § 186.22(b)(1) (2001).

Here, Deputy Contreras testified that he had worked in the Lamont area for nine years as a patrol deputy and liaison officer for the gang suppression units. (Lodged Doc. 11 at 84-86.) He testified regarding the activities of the Lamont 13 criminal street gang, including that the gang's primary activity was committing criminal offenses ranging from vandalism to homicide. (Id. at 95-

98.) He also testified regarding the details of specific crimes committed by members of the Lamont 13 gang. (Id. at 100-04.) Deputy Contreras further testified that, in his opinion, Petitioner was a member of the Lamont 13 criminal street gang. Deputy Contreras explained that he had known Petitioner for several years, Petitioner had admitted being a member of the Lamont 13 gang at least five times, the police had field identification cards referring to Petitioner's involvement in the gang, and Petitioner had claimed he was a member of a street gang when he was booked into jail. (Id. at 107-115.) Given this evidence, and the facts surrounding the crimes committed against the victim as detailed above, there was sufficient evidence to support the imposition of the gang enhancements and Petitioner's conviction for unlawful participation in a criminal street gang.

### F.  Ground Six

Petitioner makes numerous claims of ineffective assistance of counsel.

These claims were presented in a petition for writ of habeas corpus to the Kern County Superior Court, which denied the petition in a reasoned opinion. (Lodged Doc. 6.) The issues were then presented in petitions for writ of habeas corpus to the California Court of Appeal and California Supreme Court, which summarily denied the petitions. (Lodged Docs. 7-8.) The Court of Appeal and California Supreme Court, by their "silent orders" denying the petitions, are presumed to have denied the claims presented for the same reasons stated in the opinion of the lower court. Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991).

In rejecting Petitioner's claims, the Superior Court found that Petitioner failed to establish deficient performance by counsel or prejudice. (Lodged Doc. 4 at 3-5.)

The law governing ineffective assistance of counsel claims is clearly established for the purposes of the AEDPA deference standard set forth in 28 U.S.C. § 2254(d). Canales v. Roe, 151 F.3d 1226, 1229 (9th Cir. 1998). In a petition for writ of habeas corpus alleging ineffective assistance of counsel, the court must consider two factors. Strickland v. Washington, 466 U.S. 668, 687 (1984); Lowry v. Lewis, 21 F.3d 344, 346 (9th Cir. 1994). First, the petitioner must show that counsel's performance was deficient, requiring a showing that counsel made errors so serious that he or she was not functioning as the "counsel" guaranteed by the Sixth Amendment. Strickland, 466 U.S. at 687. The petitioner must show that counsel's representation fell below an objective standard

of reasonableness, and must identify counsel's alleged acts or omissions that were not the result of reasonable professional judgment considering the circumstances. Id. at 688; United States v. Quintero-Barraza, 78 F.3d 1344, 1348 (9th Cir. 1995). Judicial scrutiny of counsel's performance is highly deferential. A court indulges a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. Strickland, 466 U.S. at 687; Sanders v. Ratelle, 21 F.3d 1446, 1456 (9th Cir. 1994).

Second, the petitioner must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result ... would have been different." Strickland, 466 U.S. at 694. Petitioner must show that counsel's errors were so egregious as to deprive the defendant of a fair trial, one whose result is reliable. Id. at 688. The court must evaluate whether the entire trial was fundamentally unfair or unreliable because of counsel's ineffectiveness. Id.; Quintero-Barraza, 78 F.3d at 1345; United States v. Palomba, 31 F.3d 1356, 1461 (9th Cir. 1994).

A court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the petitioner as a result of the alleged deficiencies. Strickland, 466 U.S. at 697. Since the defendant must affirmatively prove prejudice, any deficiency that does not result in prejudice must necessarily fail. However, there are certain instances which are legally presumed to result in prejudice, e.g., where there has been an actual or constructive denial of the assistance of counsel or where the State has interfered with counsel's assistance. Strickland, 466 U.S. at 692; United States v. Cronic, 466 U.S. 648, 659 & n.25 (1984). Ineffective assistance of counsel claims are analyzed under the "unreasonable application" prong of *Williams v. Taylor*, 529 U.S. 362 (2000). Weighall v. Middle, 215 F.3d 1058, 1062 (9th Cir. 2000).

1. Failure to make motion to suppress

Petitioner argues that counsel was ineffective in not moving to suppress the victim's identification testimony. Petitioner claims that suppression was appropriate because the cassette containing the pre-trial interview of the victim was erased.

Petitioner has not shown, however, a reasonable probability that a motion to suppress the victim's identification testimony would have been successful, as there was neither misconduct in erasing the cassette nor unreliability in the identification of Petitioner for the reasons discussed in

parts III.B and III.D.  See Meeks v. Moore, 216 F.3d 951, 968 (11th Cir. 2000) (finding counsel was not ineffective in failing to file a motion to suppress an identification where motion would have been denied).

### 2.  Failure to cross-examine the victim

Petitioner argues that counsel was ineffective in failing to properly cross-examine the victim with his prior inconsistent statements.

Petitioner has not shown deficient performance or prejudice as he has not identified any specific inconsistent statements counsel should have used to create doubt about the victim's reliability.  Further, the record does not disclose any significant inconsistencies in the victim's testimony that, if used by counsel, were reasonably likely to affect the outcome of the trial.

### 3.  Failure to make motion to reduce witness intimidation charge

Petitioner argues that counsel was ineffective in failing to make a motion to reduce the witness intimidation charge to a lesser included offense because there was no evidence that Petitioner made a direct threat of force or violence against the victim.

As noted above, Penal Code section 136.1(a)(2) prohibits "[k]nowingly and maliciously attempt[ing] to prevent or dissuade any witness or victim from attending or giving testimony at any trial, proceeding, or inquiry authorized by law." Cal. Penal Code § 136.1(a)(2).  No specific words or actions are required to constitute the offense.  Instead, the words or actions must support the inference that the defendant attempted to induce a person to withhold testimony.  People v. Mendoza, 59 Cal.App.4th 1333, 1344 (1997).

Petitioner has not shown deficient performance or prejudice, as section 136.1(a)(2) does not require a direct threat of force or violence.  Further, there was sufficient evidence to support Petitioner's conviction for witness intimidation as discussed in part III.C.

### 4.  Failure to cross-examine Deputy Contreras

Petitioner argues that counsel was ineffective in failing to properly cross-examine Deputy Contreras regarding the level of Petitioner's gang involvement.

Deputy Contreras, after testifying about his experience with street gangs and the activities of the Lamont 13 gang, gave his opinion that Petitioner was a member of the Lamont 13 gang.  (Lodged

Doc. 11 at 84-86, 95-98, 100-04, 109.)  He reached that conclusion because he had known Petitioner for several years, Petitioner had admitted being a member of the Lamont 13 gang at least five times, the police had field identification cards referring to Petitioner's involvement in the gang, and Petitioner had claimed he was a member of a street gang when he was booked into jail.  (Id. at 107-115.)  The evidence further showed that Petitioner acted in concert with other Lamont 13 gang members during the assault and robbery, then came to the victim's home and threatened him after he reported the incident to the police.  (Id. at 52-69.)

Given this evidence, Petitioner has not shown a reasonable probability of a different outcome even if counsel had challenged Deputy Contreras's testimony regarding Petitioner's level of involvement in the gang.

### 5.  Inattention to elements of charged offenses

Petitioner argues that counsel was ineffective in failing to pay sufficient attention to the elements of the charged offenses.  Petitioner claims that he did not have knowledge that the crimes would occur, or the necessary intent, and that he was not an active gang member.

There was sufficient evidence to support each of Petitioner's convictions, and the enhancements that were imposed, as discussed in parts III.A, III.C, and III.E.  He has therefore not shown deficient performance by counsel or prejudice, as he has not explained how the outcome would have been changed if counsel was more attentive to the elements of the offenses.

### 6.  Failure to request special jury instructions

Petitioner claims that counsel was ineffective in failing to request special jury instructions. Petitioner claims that the instructions should have stated that, to prove active participation in a gang, a person must devote all or a substantial part of his time and efforts to the gang and participation must be current.

At the time of Petitioner's offenses, Penal Code section 186.22(i) stated as follows:

> In order to secure a conviction, or sustain a juvenile petition, pursuant to subdivision (a), it is not necessary for the prosecution to prove that the person devotes all, or a substantial part of his or her time or efforts to the criminal street gang, nor is it necessary to prove that the person is a member of the criminal street gang.  Active participation in the criminal street gang is all that is required.

Cal. Penal Code § 186.22(i) (2001).  Penal Code section 186.22(b)(1) provided for a sentence

enhancement for "any person who is convicted of a felony committed for the benefit of, at the direction of, or in association with any criminal street gang, with the specific intent to promote, further, or assist in any criminal conduct by gang members." Cal. Penal Code § 186.22(b)(1) (2001). Petitioner has not shown deficient performance or prejudice, as the jury was properly instructed regarding the unlawful participation in a gang charge and the gang enhancements. (See CT at 123-25, 131-32.)

### 7. Failure to provide clothing for trial

Petitioner argues that counsel was ineffective in failing to provide him street clothes for trial. Petitioner claims that he was only provided a T-shirt and that he was therefore forced to appear in front of the jury in jail pants, jail shoes, and a jail identification bracelet.

"[A]lthough the State cannot, consistently with the Fourteenth Amendment, compel an accused to stand trial before a jury while dressed in identifiable prison clothes, the failure to make an objection to the court as to being tried in such clothes, for whatever reason, is sufficient to negate the presence of compulsion necessary to establish a constitutional violation." Estelle v. Williams, 425 U.S. 501, 512-13 (1976); Jackson v. Brown, 513 F.3d 1057, 1080-81 (9th Cir. 2008).

Here, the record does not disclose that any objection was made regarding Petitioner's clothing at trial. Further, even if counsel was deficient, Petitioner has not shown a reasonable probability of a different outcome if he had been provided a full set of clothing, as the evidence of his guilt was compelling. The victim selected Petitioner from a photographic lineup after two separate encounters, then reiterated the identification during trial. Further, the victim was able to immediately identify his other assailants by their nicknames, and they were known to be associates of and members of the same gang as Petitioner.

### 8. Failure to properly cross-examine the victim

Petitioner argues that counsel was ineffective in failing to emphasize certain inconsistencies in the victim's testimony.

Petitioner has failed to show prejudice, however, as he has not shown a reasonable probability of a different result if counsel had specifically emphasized the various inconsistencies

that Petitioner identifies in the victim's testimony.

9. Failure to object to Petitioner being held over on conspiracy theory

Petitioner argues that his counsel at the preliminary hearing was ineffective in failing to object to Petitioner being bound over on the basis of a conspiracy when Petitioner was not charged with conspiracy.

At the hearing, the court found that "[Petitioner] has also been properly identified, and under either theory, whether he is a co-conspirator because he's a gang member or because he actively participated, I find that there is evidence for each of those counts." (CT at 73.)

Petitioner has not shown deficient performance by counsel as, under California law, conspiracy need not be charged to hold a defendant criminally culpable under that theory of liability. People v. Gallego, 52 Cal.3d 115, 188 (1990); People v. Belmontes, 45 Cal.3d 744, 788 (1988); see also People v. Durham, 70 Cal.2d 171, 180 n.7 (1969). Further, Petitioner has not shown prejudice resulting from counsel's failure to object, as the court found sufficient evidence to hold Petitioner over on both a conspiracy theory and based on his active participation.

**IV. Proper Respondent**

Respondent states that the proper Respondent in this action is Tom Felker. (Answer at 1 n.1.) Pursuant to Rule 25 of the Federal Rules of Civil Procedure, the Clerk will be directed to substitute Tom Felker as Respondent in this matter.

**RECOMMENDATION**

Accordingly, the Court RECOMMENDS that the petition for writ of habeas corpus be DENIED WITH PREJUDICE and the Clerk of Court be DIRECTED to enter judgment for Respondent.

This Findings and Recommendation is submitted to the Honorable Anthony W. Ishii, United States District Court Judge, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Rule 72-304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within thirty (30) days after being served with a copy, any party may file written objections with the

court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Replies to the objections shall be served and filed within ten (10) court days (plus three days if served by mail) after service of the objections. The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

**ORDER**

The Court HEREBY ORDERS that the Clerk of Court is DIRECTED to substitute Tom Felker as Respondent in this matter.

IT IS SO ORDERED.

**Dated:   September 29, 2008            /s/ John M. Dixon**
UNITED STATES MAGISTRATE JUDGE